# The Toledo, Wabash and Western Railway Co.

## v.

# Lydia F. Moore, Admx. etc.

| 77 | 217 |
|----|-----|
| 22a | 508 |
| 77 | 217 |
| 38a | 406 |
| 77 | 217 |
| 44a | 38 |
| 77 | 217 |
| 72a | 83 |
| 72a | 662 |
| 77 | 217 |
| 77a | 514 |
| 79a | 515 |
| 77 | 217 |
| 84a | 155 |
| 84a | 230 |
| 77 | 217 |
| 109a | [4]475 |
| 77 | 217 |
| 110a | [3]584 |
| 77 | 217 |
| 215 | [4]386 |

1. New trial—*on finding of the facts.* Where there is evidence from which the jury could properly find their verdict, it will not be disturbed, although the evidence may, in the opinion of this court, justify a different result.

2. If there is a total failure of the evidence, or if the verdict is manifestly against the weight of the evidence, it is the duty of the court to award a new trial and submit the cause to another jury.

3. Same—*where the evidence is conflicting.* Where the evidence is conflicting, and the witnesses have the same means of information and are equally credible, this court will not interfere with the finding of the jury unless there should be a clear and manifest want of evidence upon which to base it.

4. Negligence—*prima facie evidence of.* The fact of the explosion of the boiler of a locomotive and killing of a person not in the employ of the railroad company, and in no way connected with it, is *prima facie* evidence of negligence in the company.

5. But where such an explosion happens through the negligent manner in which the engine is managed by the engine-driver, and kills the latter; or, if he had good reason to believe the boiler was unsafe; or if, by the exercise of ordinary skill, he could have learned that the engine was unsafe, and still used it, no recovery can be had for his death; and in a suit by his personal representative to recover for his death, the explosion will not afford *prima facie* evidence of negligence against the company.

6. Same—*instruction as to evidence of.* In a suit by an administratrix against a railroad company to recover for the death of her intestate, who was an engine-driver of the company when killed by an explosion of the boiler of his engine, the court instructed the jury that, if the deceased used due care in running the engine, and it was no part of his duty to make a critical examination to ascertain the condition of the boiler, the bursting of the same was *prima facie* evidence of negligence which the company was bound to rebut by a preponderance of testimony: *Held,* that the instruction was erroneous, as it was a question of fact whether the accident arose from defects in the engine, or was attributable to the failure of the deceased to discharge a duty enjoined on him as engineer; and that, in the determination of these facts, the parties should have been placed before the jury with no presumptions in favor of either.

7. SAME—*right of servant to recover against master for.* It may be regarded as the settled doctrine of this court that one servant of a common master can not recover for injury resulting from negligence of another servant in the same line of employment, if the master has used proper diligence in the selection of competent servants. But where the two servants are not in the same line of employment, the one injured may recover from the common master.

8.   Thus, where an engineer was killed by the explosion of the boiler of his engine, it was *held* to have been the duty of the railway company to furnish the deceased with a safe engine, and if this duty was neglected, the company could not relieve itself from liability on the ground that its mechanics, whose duty it was to build and keep in safe repair its engines, were derelict in the discharge of their duty, such duty not being in the same line of employment with that of the deceased.

9.   INSTRUCTION—*when great accuracy required.* When the evidence as to the leading facts of a case is evenly balanced, the jury should be instructed as to the law, with accuracy.

10.   LAW AND FACT.   Where a servant of a railroad company is killed in consequence of negligence on the part of other servants of the same company, in a suit by his administratrix, against the company. it is proper to submit to the jury, as a matter of fact, whether the deceased and such other servants were in the same line of employment.

APPEAL from the Circuit Court of Piatt county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. NELSON & ROBY, and Mr. A. J. GALLAGHER, for the appellant.

Messrs. CREA & EWING, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action on the case. brought by Lydia F. Moore, administratrix, against the Toledo, Wabash and Western Railway Company, to recover damages for the death of her husband, John H. Moore, who was killed on the 1st day of September, 1871, while in the employ of the railway company as engine-driver, by the explosion of an engine alleged to have been defective and unfit for use upon the road.

A trial was had before a jury. and appellee recovered a judgment of $5000. The court overruled a motion for a new

trial. and the railway company bring the record here by appeal.

It is argued by the counsel of appellant. in a very able review of the evidence, that the judgment should be reversed because the verdict on the controverted question of fact, the insecurity of the boiler, is contrary to the weight of the testimony.

The law has provided for the trial of issues of fact before a jury. and it is no part of the duty of an appellate court to interfere with the result, except it may be to prevent manifest injustice.

The rule is, that where there is evidence from which the jury could properly find their verdict, it will not be disturbed, although the evidence might, in the opinion of the appellate court. justify a different result. If there is a total failure of evidence. or if the verdict is manifestly against the weight of the evidence. it is the duty of the court to award a new trial and submit the cause to another jury. *C., B. and Q. R. R. Co.* v. *Gregory*, 58 Ill. 274.

Where the record discloses a conflict of evidence, and the witnesses have the same means of information and are equally credible, we can not interfere with the finding unless there should be a clear and manifest want of evidence upon which to base the verdict.

On the question as to the sufficiency. and safety of the boiler, in its condition at the time deceased was sent out upon the engine, there is a clear conflict of testimony.

On the one hand, appellee introduced evidence tending to establish the fact that the accident resulting in the death of Moore was occasioned by the boiler being out of repair. which was known by the mechanics of appellant who had charge of the repair shops; that stay-bolts in the fire-box of the boiler were broken, and that the heads of a large number of the stay-bolts had worn off flush with the centre of the sheet and had been tightened up by centre-punching, which rendered the boiler unsafe and insecure.

On the other hand, appellant introduced testimony tending to prove that the engine was constructed of the best material and after the most approved style, and that it was in proper repair, and that it was regarded as safe as any engine upon the road.

The witnesses called by appellee and appellant seem to be of equal credibility. On neither side do they seem to be actuated, so far as we can perceive from the record, by prejudice or interest. Many of them are mechanics, skilled in their profession.

Under such circumstances, it was the peculiar province of the jury to weigh the evidence introduced by each party, and from it determine on which side the preponderance was. This was done by the jury, and, so far as we can discover, without passion or prejudice. Such being the case, should we interfere with the finding, it would, in effect, be usurping the province of the jury on a question of fact which the law has intrusted to their decision, which we are not prepared to do.

It is, however, insisted by appellant, that the court erred in giving to the jury appellee's third instruction, which was as follows:

"If the jury believe, from the evidence, that John H. Moore, the husband of the plaintiff, was an engineer, in the employ of the defendant, at the time of his death, as a railroad engineer, on the 1st day of September, A. D. 1871, or thereabouts, and that, while he was running his engine with due care and caution, the boiler of said engine burst and killed said John H. Moore; and if the jury further believe, from the evidence, that it was no part of the duty of said John H. Moore to keep said boiler in repair or to make critical or close examination to ascertain the condition of said boiler; and if the jury believe, from the evidence, that there were agents and servants of the defendant, employed by the defendant, whose duty it was to keep said engine in a reason-

ably safe condition of repair for the use of said John H. Moore, then, and in such case, the bursting of the said boiler, if the jury believe, from the evidence, that said boiler did burst, would be *prima facie* evidence of the negligence of the defendant; and, unless the jury believe, from the evidence, that the defendant has, by a preponderance of evidence, rebutted said *prima facie* negligence, then, and in such case, the jury should find for the plaintiff."

It was held, in *Ill. Cen. Railroad Co.* v. *Phillips.* 49 Ill. 235, that the fact that the boiler exploded was *prima facie* evidence of negligence, and that, in such a case, the burden of disproving negligence would devolve upon the company. But it will be observed that in the Phillips case the person injured was a bystander, who was not in the employ of the company and in no manner connected with it. Under such circumstances, it was very proper to hold that the explosion made out a *prima facie* case of negligence, for the reason that the company would be liable if the explosion occurred on account of defects of the engine, or through the negligence of the engine-driver.

But the doctrine announced in the Phillips case can not apply where the action is brought to recover for an injury received by the engine-driver himself.

If the boiler exploded through the negligent manner in which the engine was managed by Moore, or if he knew or had good reason to believe the boiler was unsafe, or if, by the exercise of ordinary skill, he could have learned that the engine was defective, and still used it, there can be no pretense but such would preclude a recovery; or, if such was the case, the explosion would not make out a *prima facie* case against the company; and yet, the jury were told by the instruction that if the deceased used due care in running the engine, and that it was no part of his duty to make a critical examination to ascertain the condition of the boiler, the bursting would be *prima facie* evidence of negligence, which the company was bound to rebut by a preponderance of testimony.

This instruction was highly prejudicial to the rights of appellant, and we can not regard it otherwise than erroneous.

It was a question of fact, for the jury to determine from the evidence, whether the accident arose from the defects in the engine, or whether it was to be attributed to the failure of the deceased to discharge a duty enjoined upon him as engineer. In the determination of this fact, the parties should have been placed before the jury, by the instructions, on equal terms; no presumption should have been indulged in favor of either. This, however, the court failed to do.

If this was a case, in its facts, where the evidence largely preponderated in favor of appellee, we might decline to reverse, on the ground that the instruction, although erroneous, did not mislead the jury; but the evidence of the parties is so evenly balanced that justice and the rights of the parties demand that the law should be given accurately to the jury.

It is next urged by appellant, as a ground of reversal of the judgment, that by appellee's first and second instructions the question was submitted to the jury as one of fact, whether Moore, and the servants of appellant who had charge of appellant's repair shops, and whose duty it was to keep the engine in proper repair, were engaged in the same line of duty or employment under a common master.

Even if it be true that the question was one for the determination of the court, and not properly for the jury, we fail to see in what manner appellant was injured by the instructions.

If the court, in addition to the question as to the sufficiency of the engine and the manner in which it was operated at the time of the explosion, submitted the further question to the jury whether the deceased and the agents of appellant in charge of the shops were in the same line of employment, we are unable to perceive that appellant's case was prejudiced.

It was, however, held by this court, in case of *C., B. and Q. R. R. Co. v. Gregory,* 58 Ill. 272, that a question of this char-

acter was properly submitted to a jury, and the decision must be held conclusive upon the point here made.

The last point relied on by appellant is the refusal of the court to give the following instruction:

"The court instructs, for the defendant, that, if the jury believe, from the evidence, that the defendant had in its employ, before, and at the time of the injury complained of, Thomas G. Gorman, as master mechanic, and William Maxwell, as master boiler maker, and that the engine and boiler were under their care and control, and that they were responsible for its good condition ; and if they further believe, from the evidence, that at the time of their employment by defendant, Gorman and Maxwell were men of a high degree of skill in their line of business, and were fully competent to the discharge of their duties, and that they so continued until after the injury, and were guilty of no negligence of which the defendant had knowledge, or might have known by reasonable diligence, then the defendant would not be liable in this case, notwithstanding the jury may believe, from the evidence, that the engine was unsafe and unfit for service when it went into Moore's hands."

The point involved in this instruction is, whether the deceased was engaged in the same line of employment with the servants of the company who had charge of appellant's shops where engines were built, examined and repaired, to be used upon the road.

It appears, from the evidence, that Gorman had charge of appellant's shops at Springfield, where locomotives were made and repaired and kept in order. Maxwell was foreman, and in that capacity it was his duty to inspect the engines and make all necessary repairs. It was a part of his duty to examine the fire-box of the boiler at stated periods and see that it was kept in proper repair.

It also appears that, under the management of the road, the engine was delivered to the engine-driver fired up and in

readiness to be attached to the train. It was the duty of the engine-driver to see that the working machinery of the engine was in proper condition, but it was no part of his business to examine into the construction or condition of the fire-box of the boiler and determine if it was made of proper material, or whether the stay-bolts were sound or broken. Indeed, this fact could only be determined by mechanics skilled in. that department of the business.

It may be regarded as the settled doctrine of this court, that one servant of a common master can not recover for an injury resulting from negligence of another servant in the same line of employment, if the company has used proper diligence in the selection of competent servants. *Ill. Cen. R. R. Co. v. Cox,* 21 Ill. 24; *Chicago and Alton R. R. Co. v. Keefe,* 47 Ill. 108; *Same v. Murphy,* 53 Ill. 336; *C., B. and Q. R. R. Co. v. Gregory,* 58 Ill. 272.

But this court has, in a number of cases, held that one servant can recover from a common master for an injury caused by the negligence of a fellow servant, where the two were not in the same line of employment. *C., B. and Q. R. R. Co. v. Gregory, supra.*

In the case of *Chicago and N. W. R. R. Co. v. Swett,* 45 Ill. 197, where a fireman upon an engine was killed by an accident which occurred from the negligence of the company in the construction of the road. and its failure to keep it in proper repair, it was there said: There is no rule better settled than this, that it is the duty of railroad companies to keep their road and works and all portions of the track in such repair, and so watched and tended, as to insure the safety of all who may lawfully be upon them. whether passengers or servants or others. They are bound to furnish a safe road-bed, and sufficient and safe machinery and cars. For their failure in this, and their employees not knowing the defects and not contracting with express reference to them, the companies must be held liable for such injuries as their employees may suffer thereby.

In the case of *Chicago and Alton Railroad Co.* v. *Shannon*, 43 Ill. 338, where a brakeman upon a train of the company's cars was killed by the explosion of the boiler of a locomotive, the same doctrine was announced, and a recovery against the company was sustained.

It was clearly a duty, resting upon appellant, to furnish the deceased a safe engine to use upon its road. If this duty was neglected, can it shield itself from liability behind the fact that its mechanics, whose duty it was to build and keep in safe repair its engines, have been derelict in the discharge of their duty?

If this be true, upon the same principle the company could not be held responsible for a failure to properly construct and keep in repair its road, for the reason that its servants, in the work of constructing and repairing, may have disregarded a duty.

The engine-driver can, with no more reason, be said to be in the same line of employment with the master mechanics whose duty it is to build and repair engines in the shops of the company, than is a brakeman in the same line of employment with the construction hands who build or keep in repair the road.

We can not, therefore, regard the deceased in the same line of employment as Gorman and Maxwell, who had charge of appellant's shops, and the instruction was properly refused.

For the error indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*