70    429
114   ⁴575

## Cleveland, C., C. & St. L. Ry. Co. v. Marion M. Hall.

1. PLEADING AND EVIDENCE—*As to Negligence.*—In a suit for personal injuries, where the negligence charged is an order in regard to unloading timber from a car, it is proper to allow witnesses to testify as to the proper method of unloading the timbers. Such evidence does not introduce a new charge of negligence, it only illustrates the negligence of the order given.

2. INSTRUCTIONS—*Repetitions in, Not Required.*—Where the first clause of an instruction expressly informs the jury that their belief must be formed from the evidence, such instruction is not vitiated by the fact that in a subsequent part of the same instruction they are told that if they believe, etc., they will find, etc., no reference being made to the fact that such belief must be founded on the evidence.

·3. SAME—*Need Not be Duplicated.*—It is not error to refuse to give an instruction stating practically the same proposition as that stated in another which is given.

4. SAME—*Should Relate to Facts Shown.*—Where there are no facts in a case on which to base a proposed instruction, it should be refused.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Saline County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1897. Affirmed. Opinion filed June 10, 1897.

C. S. CONGER, attorney for appellant.

PARISH & PARISH, attorneys for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee brought this suit to recover damages for a personal injury caused, as alleged, by the negligence of one Hanson, foreman of a bridge gang, in which appellee was working, in giving an improper order while appellee and the other men were handling a heavy piece of timber. The facts in brief are that the men were removing timbers from a bridge. The method employed was to load the timbers on a push car, some eight feet long, supplied with a derrick, crabs, leads and ropes for hoisting the timbers on the car. This apparatus had a windlass and drum, around which drum the rope was placed several times, and a man held the loose end, who pulled on or slackened the rope as required, and was called the snub man. The other end ran through a pulley at the top of the derrick, which was some eight or nine feet in height, and then was taken out to and tied around the timber that was desired to be raised and lowered on the car. The top of the derrick could be given a slant. The raising was done by means of the windlass. When such lifting was being done the car was fastened down on the opposite side by means of a chain or iron link fastened to the iron rail of the track, to prevent the car from tipping. Two large timbers had been placed on the car and settled there so they would remain. The third timber, some thirty feet

in length, sixteen inches wide and eight inches thick, weighing about 1,000 pounds, was also lifted above the car by the derrick, but there was not room for it to securely rest on the car. Therefore one Lawrence took hold of the rope that extended from the top of the derrick down to the timber to which it was tied, and pulled the timber in so that the timber, which was held by the rope, would swing in over the car, instead of to one side, as it would otherwise do, on account of the slant of the derrick top, while one West held the snub, or other end of the rope that ran around the drum, so as to keep it taut, and Hall, the appellee, who operated the windlass and had lifted the timber, threw his knee under the windlass handle, so as to hold up the timber by the rope. When the car was so loaded it was released from its attachment to the track, and was being pushed by other men of the crew to a place beyond the bridge, where the timbers were to be unloaded. The foreman, Hanson, was following the car and directly superintending this work. When the car had about reached the place to unload Hanson ordered the car stopped, but while it was still in motion ordered Lawrence, who held in the timber over the car, to let loose and "give a hand," or words to that effect. Almost the moment Lawrence let loose of the rope, and before he could get off the car, the timber swung out, upset the car and threw both Lawrence and Hall to the ground, causing a double fracture of the thigh bone of Hall, and resulting in a permanent injury. West, the snub man, tumbled off the car backward, while Lawrence, though thrown some distance, escaped injury.

There is no claim that Hall was not acting strictly in the performance of his duty, or that he was negligent. The defense interposed is, 1, that it was the result of an inevitable accident, in that, as claimed, the rope caught in the pulley at the top of the derrick, and thus prevented the timber from dropping to the side of the car, which, as insisted, it otherwise would; or 2, that it was caused by the failure of West, the snub man, to give slack to the rope, and thus permit the timber to so drop; and if it was his fault, then it was clearly the negligence of a fellow-servant.

The evidence shows the machinery of the car was in proper condition. West is the only one who claims the rope was caught in the pulley, after the rope had slackened about one foot. In our judgment, it is clear the accident occurred so suddenly, after Lawrence let loose of the rope, that West knew nothing about the rope being caught in the pulley. He did not have time to observe the fact. There is no fact to induce the belief that the rope was caught in the pulley, at least until the car had tipped over so far as to throw the rope off the pulley, which fact, if it so occurred, in no way contributed to the accident. The accident was not caused by the negligence of West, the snub man. He was not notified, neither was it the fact that the car had arrived at the spot or place where the timbers were to be unloaded. He knew of the order to stop the car, but he also knew it had not stopped, and it was not his duty to lower away or slack the rope until the car had stopped. It was not the intention of any one to lower the timber while the car was in motion. The order given by Hanson was thoughtlessly and negligently given, and was the cause of the accident. He was the foreman, with full power to direct, discharge and employ the men, and therefore the vice-principal of the appellant, and was acting in that capacity when this negligent order was given.

There was no error committed in permitting witnesses to testify as to the proper method of unloading such timbers, by chaining down to the iron rails the opposite side of the car. The gist of the negligence charged was the order to Lawrence to let go the rope, whereby the timber was pulled in over the car, and which order resulted necessarily in the timber swinging out to the side of the car and thus upsetting it. This evidence did not introduce a new charge of negligence. It only illustrated the negligence of the order given. That is, that before swinging such a heavy timber off to one side of such a light car, the car should have been stopped and chained to the track, as was done in this case in loading, to prevent upsetting. Herein this case is distinguished from Ebsery v. C. C. Railway Co., 164 Ill. 518,

and T. W. & W. Ry. Co. v. Foss, 88 Ill. 551, cited by the learned counsel for appellant.

Objection is made to the sixth instruction given for appellee on the ground that, while it directs, in the first part, that the jury must "believe from the evidence," in a subsequent part, on a vital fact, it directs, if they "believe," etc.

What is said in Miller v. Balthasser, 78 Ill., at p. 305, is applicable to this objection: "The first clause of the instruction expressly informs the jury that their belief must be formed from the evidence, and while the same is not repeated in the latter clause, a jury composed of sensible men could not infer that they had the right to travel outside of the record in search of proof upon which to form a verdict."

There was no error committed in refusing to give instruction marked number one, refused, of defendant, to the effect that if the car was upset by reason of the pulley in derrick failing to work from some unforeseen cause, that could not by reasonable diligence have been discovered, then the jury should find for the defendant. The thought of this instruction was embodied in the language of instruction number nine, given for defendant, relating to an unforeseen accident. While the instruction does not mention the pulley or the rope failing to run through it, yet it could refer to nothing else developed from the evidence in the case.

Instruction number two offered by defendant was properly refused. It related to the doctrine of fellow-servants.

There were no facts in this case on which to base it, as presented in that instruction.

The injury resulted from the negligent order, not negligent act, of Hanson.

The judgment is affirmed.